IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RONNIE A. RUCKER, ) | |
| ) | |
| Plaintiff, ) | Civil No. 08-6150-HO |
| ) | |
| v. ) | ORDER |
| ) | |
| TOM VILSACK, U.S. Secretary, ) | |
| Department of Agricultural, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff, Ronnie Rucker, brings this action against the United States Secretary of the Department of Agriculture pursuant to the Age Discrimination in Employment Act (ADEA) alleging the Forest Service[1] violated the ADEA by: (1) engaging in disparate impact discrimination when it reassigned Rucker from his position as a smokejumper after he failed a physical fitness test; (2) engaging in disparate treatment

---

[1]The Forest Service is an executive agency within the United States Department of Agriculture.

discrimination when it failed to promote Rucker; and (3) retaliating against Rucker.

Rucker began work with the Forest Service in 1973 and was promoted to the smokejumper squad leader position in 1990 at the GS-7 level. Rucker received several temporary promotions to smokejumper operations manager at the GS-9 level, after which he would return to squad leader at the GS-7 level.

All smokejumpers are required to pass an annual physical fitness test which includes seven pull-ups, 25 push-ups, 45 sit-ups, and running a mile and half in 11 minutes or less. Smokejumpers are given three scheduled opportunities to pass the test. Rucker passed the test every year from 1974 through 2004.

In March of 2005, Rucker, at the age of 51, applied for one of three smokejumper spotter positions at the GS 7-8 level. Daniel Torrence, the Redmond, Oregon Air Center Manager, recommended three others for the position, including 50 year old Tony Loughton, who were selected over Rucker. Rucker instituted a disparate treatment claim with the EEOC as a result.

In 2005, Rucker failed the running component of the physical fitness test. Rucker was given 10 opportunities to pass between late March and mid-June despite the Forest Service policy of three tests. After Rucker failed the running test on June 13, 2005, Torrence sent Rucker a letter informing him of a proposal to remove him from his smokejumping position. However, on July 21, 2005, Rucker was injured

in a plane crash while on the job and after which, he rescued the other two occupants of the plane. Accordingly, Torrence chose not to pursue Rucker's removal so as not to limit Rucker's placement into another position while injured.

Rucker took a week to recover before returning to the Redmond Air Center. On December 1, 2005, Rucker's doctor cleared Rucker for full smokejumping duty with no restrictions.

On January 12, 2006, Bill Selby, the Redmond Smokejumper unit manager, sent a letter to all smokejumpers reminding them of the upcoming physical fitness test. The letter also noted the Forest Service policy of only three opportunities to pass the test. On February 6, 2006, Torrence sent a letter to Rucker detailing the Forest Service's expectation that Rucker would need to pass the test to remain in his smokejumping position for 2006.

Rucker did not participate in the first test. During the second test, Rucker completed the mile and a half run in 11 minutes three seconds. During the third test, Rucker failed to complete the run.[2]

On April 4, 2006, Torrence informed Rucker of a proposal to remove him from the smokejumper position. Later in April of 2006, Rucker accepted a supervisory forestry technician position in the Ochoco National Forest in Prineville, Oregon at the GS-7 level. Following the reassignment, Rucker was stationed at the Redmond Air

---

[2] Three other smokejumpers, women in their 20s, also failed the physical fitness test in 2006. Each was either terminated or reassigned.

3 - ORDER

Center only during occasional temporary assignments as an air tactical group supervisor. Rucker filed a complaint with the EEOC on April 10, 2006, alleging age discrimination.

In September of 2006, the Forest Service sent Rucker to Washington, D.C. to receive a medal of heroism for the rescue of the occupants of the plane crash on July 21, 2005. Around this time, Rucker gave an interview to a reporter from the Las Vegas Review-Journal. In the article, Rucker is quoted as saying, "[i]t's ironic that they fired me and gave me an award." The article also reported that Rucker failed his physical fitness test because he had not yet been fully conditioned due to his injuries and had been relieved from duty by his doctor. However, Rucker was not fired and had been released to full duties by his doctor.

After reading the article, Torrence sent an e-mail to his subordinate managers informing them that Rucker would be restricted from the smokejumping loft and other smokejumper-related portions of the Redmond Air Center, explaining that Rucker's presence would be disruptive and distracting. Rucker's new position did not require him to be in the smokejumper areas of the Redmond Air Center. Rucker filed a retaliation complaint with the EEOC on October 30, 2006.

Following his reassignment, Rucker applied for a smokejumper squad leader position at the Redmond Air Center. Torrence selected Ryan Koch, who was in his early 30s at the time, citing supervisor

evaluations. Rucker filed a disparate treatment claim with the EEOC with respect to this decision.

Rucker's three EEOC complaints were consolidated and, on January 2, 2008, the administrative judge granted summary judgment in favor of the Forest Service on all claims. On February 20, 2008, the Department of agriculture entered its final order in favor of the Forest Service on all EEO complaints.

Rucker then filed the ADEA complaint before this court. The Forest Service seeks summary judgment as to all claims. Rucker also seeks summary judgment on his disparate impact claim. The United States is excluded from the ADEA's definition of "employer" under 29 U.S.C. § 630(b). Age discrimination is prohibited with respect to federal employment through 29 U.S.C. § 633a. The federal sector provision of the ADEA is a stand alone provision not affected by other provisions of the ADEA. 29 U.S.C. § 633a(f).

A.   Disparate Impact

Both parties seek summary judgment in their favor on this claim. Rucker alleges that the one and half mile run, while facially neutral, is discriminatory in effect, by its application, based on age. Rucker also alleges that the Forest Service has not validated the run to the position of smokejumper.

Although there is a split of authority as to whether disparate impact claims under the ADEA are cognizable against a federal

employer, such claims are recognized in this circuit.  See Adam v. Kempthorne, 292 Fed. Appx. 646,650-52 (9th Cir. 2008).  To establish a prima facie disparate impact claim, an employee must

> (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact.

Id. at 651.  If the employee makes such a showing, then the employer may avoid liability by showing that the adverse impact was attributable to a nonage factor that was reasonable, i.e., a reasonable factor other than age.  Smith V. City of Jackson, Miss. 544 U.S. 228, 238-39 (2005); 29 U.S.C. § 623(f)(2).

The Forest Service contends that Rucker cannot make out a prima facie case, and that even if he could, the running requirement is a reasonable factor other than age.  Rucker contends that the Forest Service has failed to adequately validate the running test pursuant to the regulations at 29 C.F.R. §§ 1625.2-7.

Rucker has identified a specific employment practice; the requirement that smokejumpers run one and half miles in 11 minutes or less.  The protected class is the group of employees 40 years of age or older.

Rucker provides an expert opinion establishing that for the years 2002 - 2005, those test participants under the age of 40 averaged 9 minutes and 25 seconds for the run, while those over the age of 40 averaged 10 minutes 18 seconds.  The expert also shows that

those participants aged 40 - 45 averaged 9 minutes 47 seconds, those aged 46-49 averaged 10 minutes 24 seconds and those aged 50 and over averaged 10 minutes and 49 seconds. Thus, regardless of age, the average employee passed the running requirement. Accordingly, the Forest Services argues that there is no significant disparate impact.

Plaintiff responds that because the results show that the employees 40 and over are clustered in the slowest 20 percent of all runners, that he has shown a significant disparate impact by virtue of the fact that the expert opines that there is a one in 6,666 chance that the test outcome was random and not age related. But plaintiff offers no evidence showing a significant impact on the protected class because the test does not weed out the slowest runners, it only disqualifies those who run slower than 11 minutes. The record shows that even though employees over 40 run slower, there is not a significant difference between the protected class and other classes in terms of passing the test. Accordingly, the Forest Service's motion for summary judgment is granted as to the disparate impact claim and Rucker's motion is denied.

B.   Disparate Treatment Claim

Plaintiff alleges that on at least 10 occasions between 1995 and the present, Rucker's managers have failed to select Rucker for promotion in deference to co-workers under the age of 40. To establish a violation of the ADEA under the disparate treatment

theory of liability, Rucker must establish a prima facie case of discrimination: (1) that he is a member of a protected class (at least age 40); (2) that he was performing his job satisfactorily; (3) that he was not promoted to a job for which he was qualified; and (4) that a substantially younger employee with equal or inferior qualifications received the promotion in his place.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th Cir. 2000).  Once Rucker establishes these elements, then the burden shifts to the Forest Service to articulate a legitimate, non-discriminatory reason for its decision.  Once such a reason is articulated, then Rucker must demonstrate that the proffered reason is a pretext for a discriminatory motive.  Id. at 1280.  The ultimate burden of proof remains on Rucker to establish intentional discrimination based on age.

It is undisputed that Rucker has only exhausted two claims of non-selection; the spotter position in 2005 and the squad leader position in 2006.  The Forest Service contends that it did not select a substantially younger employee with equal or inferior qualifications over Rucker for either position.  The Forest Service also contends that its lack of confidence in Rucker's ability to lead is a legitimate non discriminatory reason for its decisions not to promote Rucker.

1.  The 2005 Spotter Position

As noted above, Rucker applied for one of three open positions for spotter in 2005.  Those positions instead went to Tony Loughton (age 50), Gary Attenberry (age 36) and Ray Rubio (age 41).  Although Loughton is too close in age for the fourth requirement of the prima facie case, <u>Hartley v. Wisconsin Bell, Inc.</u>, 124 F.3d 887, 893 (7th Cir. 1997) (the relevant individual must be at least ten years younger than the plaintiff), both Attenberry and Rubio meet the substantially younger requirement.  The Forest Service notes that Torrence chose all three selectees because they had better qualifications in the subjective categories of leadership, mentoring, and ability to work with people.  Rucker does not address the 2005 position in his response, and the motion for summary judgment is granted as to the disparate treatment claim regarding the Forest Services' failure to promote Rucker to spotter in 2005.

2.  The 2006 Squad Leader Position

The Forest Service provides a number of evaluations from past supervisors demonstrating that Rucker did not work well with others, was not highly committed, created turmoil, was not trustworthy as a leader, was unwilling to learn new skills, that he valued his financial gain over implementing directions, lacked integrity, and felt it was okay to cheat the government. Additionally, the Forest Service provides positive recommendations for Ryan Koch with respect

9 - ORDER

to the squad leader position. In response, Rucker notes his own experience and asserts that he is better qualified in 20 different categories.[3] Plaintiff relies on his own personal assessment of his qualifications. An employee's subjective personal judgments of his competence alone do not raise a genuine issue of material fact. Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996).

Plaintiff also notes that Roland Giller, a public affairs specialist with the Ochoco and Deschutes National Forest, is quoted in the Las Vegas Review-Journal article as stating "Ron has always done well in the past, but he's getting older now."[4] Stray remarks by non-decisionmakers, however, are insufficient to establish discrimination. See Price Water House v. Hopkins, 109 S.Ct. 1775, 1804-05 (O'Connor, J., concurring) (stray remarks in the workplace cannot satisfy plaintiff's burden, nor can statements by nondecisionmakers or statements by decisionmakers unrelated to the decisional process itself); see also Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314-16 (6th Cir. 1989) (finding that a "single, isolated discriminatory comment" by plaintiff's immediate supervisor

---

[3] Plaintiff cites "Dkt. No. 29, Exh. 1, at pp. 1-6" in support. Docket Number 29 is the Declaration of Michael Trow in Support of Defendant's Motion for Summary Judgement and has lettered exhibits A through L. It appears that Rucker meant exhibit I which is an EEOC complaint affidavit made by plaintiff. The affidavit contains Rucker's belief regarding his qualifications and also contains a chart he made showing his years of experience compared to Koch. At best, this is plaintiff's personal assessment of his qualifications which is insufficient.

[4] Rucker also cites an affidavit from Torrence in which Torrence denied making any reference to age when suggesting that individuals should have a back-up plan at group meetings. See Ex. J (attached to affidavit of Craig James (#35)) at p. 4.

10 - ORDER

was insufficient to trigger burden shift or to avoid summary judgment for defendant); Smith v. Firestone Tire and Rubber Co., 875 F.2d 1325, 1330 (7th Cir. 1989) (noting that stray "remarks, ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decisionmaker in issue").[5]

Plaintiff also offers his personal opinion that recommendations sought by Torrence and Selby were merely a pretext for assassination of plaintiff's character. Plaintiff's opinion is nothing more than speculation and does not demonstrate the Forrest Service's use of subjective criteria sought through evaluations was pretextual.[6] The Forest Service's motion for summary judgment is granted as to Rucker's disparate treatment claim.

---

[5]However, when direct evidence is proffered, a single discriminatory comment can be sufficient to avoid summary judgment. See Dominguez-Curry v. Nev. Transp. Dep't., 424 F.3d 1027, 1039 (9th Cir. 2005) (when a discriminatory statement is not isolated and ambiguous, a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer."); see also Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 812 (9th Cir. 2004) ("When a plaintiff alleges disparate treatment based on direct evidence in an ADEA claim, courts do not apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 ... (1973).").

[6]Rucker also submits some charts, apparently prepared by himself, showing smokejumper promotions during a 2005 and 2006 reorganization. The charts do not demonstrate any issues of fact with respect Rucker's disparate treatment claim. Moreover, the charts do not appear to be admissible absent authentication.

11 - ORDER

C.  Retaliation Claim

Plaintiff alleges that Torrence retaliated against Rucker for his disclosures to the media that he had filed an equal employment opportunity complaint. Rucker specifically contends that banning him from "virtually all areas of his workplace is retaliatory discrimination, based upon Rucker having disclosed that he had made a charge, testified and participated in an investigation or proceeding arising under the ADEA."

The Forest Service argues that Rucker cannot make out a prima facie case of retaliation. A federal employee may assert a retaliation claim due to the filing of a complaint of age discrimination under the federal sector provision of the ADEA. Gomez-Perez v. Potter, 128 S.Ct. 1931, 1936 (2008). To establish a claim of retaliation under the ADEA, Rucker must prove that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his protected activity and the adverse employment action. Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007).

Filing EEO complaints is protected activity. Id. at 1180. However, the Forest Service contends that the alleged protected activity in this case is the making of false statements to a reporter. Plaintiff argues that

> the newspaper article apparently ran on September 14, 2006 and, that same day, Torrence, Rucker's second level supervisor, sent a broadcast e-mail to managers at the Redmond Air Base instructing that if Mr. Rucker must come

12 - ORDER

>  to the base[,] his presence was to be limited to a particular building and location. Further, Mr. Rucker was not to be allowed at the smokejumper facility or any other facility at the Air Center. Finally, Torrence advised his subordinate managers at Redmond that "I want to know of any instance where Ron [Rucker] does not adhere to this direction, so share this information with your employees as necessary."

Plaintiff's Response to Defendant's Motion for Summary Judgment (#34) at p. 13.

Plaintiff specifically contends that his response to the reporter, even if false or unreasonable, is protected under the ADEA, but only cites cases in which testimony or other participation in discrimination proceedings are found to be protected. See Glover v. South Carolina Law Enforcement Division, 170 F.3d 411, 414 (4th Cir. 1999) (deposition testimony in a Title VII proceeding); E.E.O.C. v. Total System Services, Inc., 221 F.3d 1171, 1175 (11th Cir. 2000) (false statements made during sexual harassment investigation). However, the Total System Services court noted that

> Even false statements made in the context of an EEOC charge (per the participation clause) are protected and cannot be grounds for dismissal or discipline, see Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir. 1969) (concluding that employee cannot be fired for anything written in EEOC charge), **this extreme level of protection for untruth is not afforded to false statements made under the opposition clause**. See Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir.1990) ("Accusations made in the context of charges before the Commission are protected by statute; **charges made outside of that context are made at the accuser's peril**.").

E.E.O.C. v. Total System Services, Inc., 221 F.3d at 1175 (emphasis added).

13 - ORDER

Rucker provides no authority to suggest his statements to a reporter are protected by the ADEA. It would be unreasonable for a fact-finder to conclude that statements to a reporter is testimony in a discrimination proceeding. Although, Rucker attempts to raise genuine issues of fact as to whether his statements were false, he cannot demonstrate that statements to a reporter constitute participation in EEOC proceedings.[7] Nonetheless, the e-mail from Torrence expressly states that Rucker "has voluntarily disclosed to the media that he has filed an EEO complaint and plans litigation if that is not successful." Ex. H attached to declaration of Daniel Torrence (#28). Thus, it could be found that the basis of the action to ban Rucker from certain areas at the Redmond Air Center was the filing of the EEO complaint itself and not merely the statements to the reporter. Such activity is protected.

The Forest Service also contends that Rucker did not suffer an adverse employment action because Rucker's position did not require him to be in the areas from which he was banned. Adverse employment actions may include any decision by an employer affecting "compensation, terms, conditions, or privileges of employment." See, e.g., Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004). Although, the restrictions at the air base do not appear to come within the terms, conditions, or privileges of employment, it could be construed as such. Cf. Novak v. England,

---

[7] The statements could be construed as opposition to discriminatory practices.

14 - ORDER

2009 WL 567873 (9th Cir. March 6, 2009) (relocation to isolated overflow area can be adverse employment action). At this stage of the proceedings, it is unclear what impact the decision had on the conditions of Rucker's employment.

Finally, the Forest Service contends there is no causal link. Although Torrence was aware of the EEO complaints for well over a year prior to imposing the restrictions, the e-mail itself specifically references the EEO complaint. This is sufficient to show a causal link. Moreover, even though there is a legitimate non-discriminatory reason for the restrictions, i.e., the negative effect on moral because of the false comments, the e-mail itself raises genuine issues of fact as to whether such reasons were a pretext for retaliation for filing the EEO complaint. The motion for summary judgment as to the retaliation claim is denied.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgement (#23) is granted in part and denied in part. In addition, plaintiff's motion for partial summary judgment (#33) is denied.

DATED this __19th__ day of May, 2009.

                                           __s/ Michael R. Hogan__
                                           United States District Judge