IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | | |
|---|---|---|
| RONNIE A. RUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-6150-HO |
| | ) | |
| | ) | |
| v. | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| TOM VILSACK, U.S. Secretary, | ) | |
| Department of Agricultural, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff, Ronnie Rucker, brings this action against the United States Secretary of the Department of Agriculture pursuant to the Age Discrimination in Employment Act (ADEA) alleging the Forest Service[1] violated the ADEA by: (1) engaging in disparate impact discrimination when it reassigned Rucker from his position as a smokejumper after he

---

[1]The Forest Service is an executive agency within the United States Department of Agriculture.

failed a physical fitness test; (2) engaging in disparate treatment discrimination when it failed to promote Rucker; and (3) retaliating against Rucker.

Rucker began work with the Forest Service in 1973 and was promoted to the smokejumper squad leader position in 1990 at the GS-7 level. Rucker received several temporary promotions to smokejumper operations manger at the GS-9 level after which he would return to squad leader at the GS-7 level.

All smokejumpers are required to pass an annual physical fitness test which includes seven pull-ups, 25 push-ups, 45 sit-ups, and running a mile and half in 11 minutes or less. Smokejumpers are given three scheduled opportunities to pass the test. Rucker passed the test every year from 1974 through 2004.

In March of 2005, Rucker, at the age of 51, applied for one of three smokejumper spotter positions at the GS 7-8 level. Daniel Torrence, the Redmond, Oregon Air Center Manager, recommended three others for the position, including 50 year old Tony Loughton, who were selected over Rucker. Rucker instituted a disparate treatment claim with the EEOC as a result.

In 2005, Rucker failed the running component of the physical fitness test. Rucker was given 10 opportunities to pass between late March and mid-June despite the Forest Service policy of three tests. After Rucker failed the running test on June 13, 2005, Torrence sent Rucker a letter informing him of a proposal to remove him from his

smokejumping position.  However, on July 21, 2005, Rucker was injured in a plane crash while on the job and he rescued the other two occupants of the plane.  Accordingly, Torrence chose not to pursue Rucker's removal so as not to limit Rucker's placement into another position while injured.

Rucker took a week to recover before returning to the Redmond Air Center.  On December 1, 2005, Rucker's doctor cleared Rucker for full smokejumping duty with no restrictions.

On January 12, 2006, Bill Selby, the Redmond Smokejumper unit manager, sent a letter to all smokejumpers reminding them of the upcoming physical fitness test.  The letter also noted the Forest Service policy of only three opportunities to pass the test.  The three test limit appears to have been strictly enforced for the first time in 2006.  On February 6, 2006, Torrence sent a letter to Rucker detailing the Forest Service's expectation that Rucker would need to pass the test to remain in his smokejumping position for 2006.

Rucker did not participate in the first test.  During the second test, Rucker completed the mile and a half run in 11 minutes three seconds.  During the third test, Rucker failed to complete the run. All three tests took place during a one week period, although one smokejumper was given additional time to take the tests because a doctor had indicated he was sick.

On April 4, 2006, Torrence informed Rucker of a proposal to remove him from the smokejumper position.  Later in April of 2006,

Rucker accepted a supervisory forestry technician position in the Ochoco National Forest in Prineville, Oregon at the GS-7 level. Following the reassignment, Rucker was stationed at the Redmond Air Center only during occasional temporary assignments as an air tactical group supervisor. Rucker filed a complaint with the EEOC on April 10, 2006, alleging age discrimination.

In September of 2006, the Forest Service brought Rucker to Washington, D.C. to receive a medal of heroism for the rescue of the occupants of the plane crash on July 21, 2005. Around this time, Rucker gave an interview to a reporter from the Las Vegas Review-Journal. In the article, Rucker is quoted as saying, "[i]t's ironic that they fired me and gave me an award." The article also reported that Rucker failed his physical fitness test because he had not yet been fully conditioned due to his injuries and had been relieved from duty by his doctor. However, Rucker was not fired and had been released to full duties by his doctor.

The reporter contacted Torrence to get his response to the statements, and Torrence did not respond due to privacy concerns. After reading the article, Torrence sent an e-mail to his subordinate managers informing them that Rucker would be restricted from the smokejumping loft and other smokejumper-related portions of the Redmond Air Center, explaining that Rucker's presence would be disruptive and distracting. Rucker's new position did not require

him to be in the smokejumper areas of the Redmond Air Center.  Rucker filed a retaliation complaint with the EEOC on October 30, 2006.

Following his reassignment, Rucker applied for a smokejumper squad leader position at the Redmond Air Center.  Torrence selected Ryan Koch, who was in his early 30s at the time, citing supervisor evaluations.  Rucker filed a disparate treatment claim with the EEOC with respect to this decision.

Rucker's three EEOC complaints were consolidated and, on January 2, 2008, the administrative law judge granted summary judgment in favor of the Forest Service on all claims.  On February 20, 2008, the Department of agriculture entered its final order in favor of the Forest Service on all EEO complaints.

Rucker then filed an ADEA complaint in this court.  The court granted summary judgment to the Forest Service on all claims except the retaliation claim.    On April 7, 2010, the court conducted a bench trial with respect to the retaliation claim.  After hearing all of the evidence and reviewing the exhibits, the court finds that the restrictions placed upon Rucker at the Redmond Air Center were not motivated by his EEO complaints and concludes that his retaliation claim lacks merit.

Plaintiff initially alleged that Torrence retaliated against him for his disclosures to the media that he had filed an equal employment opportunity complaint. Rucker specifically contended that banning him from "virtually all areas of his workplace is retaliatory

discrimination, based upon Rucker having disclosed that he had made a charge, testified and participated in an investigation or proceeding arising under the ADEA."

A federal employee may assert a retaliation claim due to the filing of a complaint of age discrimination under the federal sector provision of the ADEA. Gomez-Perez v. Potter, 128 S.Ct. 1931, 1936 (2008). To establish a claim of retaliation under the ADEA, Rucker must prove that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his protected activity and the adverse employment action. Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007).

Filing EEO complaints is protected activity. Id. at 1180. However, as the court noted in its order on summary judgment, Plaintiff argued that

> the newspaper article apparently ran on September 14, 2006 and, that same day, Torrence, Rucker's second level supervisor, sent a broadcast e-mail to managers at the Redmond Air Base instructing that if Mr. Rucker must come to the base[,] his presence was to be limited to a particular building and location. Further, Mr. Rucker was not to be allowed at the smokejumper facility or any other facility at the Air Center. Finally, Torrence advised his subordinate managers at Redmond that "I want to know of any instance where Ron [Rucker] does not adhere to this direction, so share this information with your employees as necessary."

Plaintiff's Response to Defendant's Motion for Summary Judgment (#34) at p. 13.

Plaintiff argued that his response to the reporter, even if false or unreasonable, is protected under the ADEA. However,

Even false statements made in the context of an EEOC charge (per the participation clause) are protected and cannot be grounds for dismissal or discipline, <u>see</u> <u>Pettway v. American Cast Iron Pipe Co.</u>, 411 F.2d 998, 1007 (5th Cir. 1969) (concluding that employee cannot be fired for anything written in EEOC charge), **this extreme level of protection for untruth is not afforded to false statements made under the opposition clause.** <u>See Vasconcelos v. Meese</u>, 907 F.2d 111, 113 (9th Cir.1990) ("Accusations made in the context of charges before the Commission are protected by statute; **charges made outside of that context are made at the accuser's peril.**").

<u>E.E.O.C. v. Total System Services, Inc.</u>, 221 F.3d 1171, 1175 (11th Cir. 2000) (emphasis added).

At trial, Rucker did little to demonstrate that Torrence's actions resulted from the EEO complaints themselves as opposed to the purported false statements.[2]  As the court has already ruled, statements to a reporter is not testimony in a discrimination proceeding.

Thus, plaintiff's case primarily stands on the e-mail itself in which Torrence expressly states that Rucker "has voluntarily disclosed to the media that he has filed an EEO complaint and plans litigation if successful." The testimony, however, did not establish that Torrence took action to limit plaintiff's access at the Redmond smokejumper loft as a result of the EEO complaints or opposition to age discrimination.  Rather, the testimony of Torrence and others with management authority over plaintiff, including operations manager Mike Jackson, established that plaintiff tried to undermine

---

[2]Moreover, plaintiff did not establish that the actions resulted from any opposition to discriminatory practices even if true statements were made that the reporter misinterpreted.

management and drive a wedge between the younger smokejumpers and management.  Although Torrence declined to seek an explanation from plaintiff regarding the newspaper interview, the court finds that Torrence believed the falsities contained in the report were among the last straws in the ability to withstand the undermining of management and what he described as fostering an unhealthy culture among the smokejumper crew.  As Mike Jackson testified, once the restrictions were implemented, it was like "a cloud was lifted," and morale improved.

While plaintiff did present some testimony that he did not have a negative effect on the crew, the balance of the evidence favors defendant in this regard.  Accordingly, the court finds that the EEO complaints did not prompt any negative actions on the part of Torrence or any other managers and that Torrence had a legitimate non-retaliatory reason for placing the smokejumper loft restrictions on plaintiff.

<u>CONCLUSION</u>

For the reasons stated above, the court finds in favor of defendant and against plaintiff on plaintiff's retaliation claim. The clerk is directed to enter a judgment in favor of defendant on all claims.

DATED this __16th___ day of April, 2010.

___ s/ Michael R. Hogan_____
United States District Judge